8        UNITED STATES DISTRICT COURT

9        SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11   GLENN EDWIN CLAY,<br>                                    Plaintiff,<br>12<br>     v.<br>13<br>     CAROLYN W. COLVIN, Acting Commissioner<br>14   of Social Security,<br>                                    Defendant.<br>15<br>16 | Case No.:  14cv2893-BAS (BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 32, 33]** |

17        Plaintiff Glenn Edwin Clay brought this action for judicial review of the Social Security

18 Commissioner's ("Commissioner") denial of his claim for disability insurance benefits.  ECF No. 1.

19 Before the Court are Plaintiff's Motion for Summary Judgment [ECF No. 32-1 ("Pl.'s Mot.")],

20 Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's motion [ECF

21

22

1

Nos. 33-1 and 34-1[1] ("Def.'s Mot.")], and Plaintiff's Reply [ECF No. 35 ("Pl.'s Reply")].

This Report and Recommendation is submitted to United States District Judge Cynthia Bashant pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California. For the reasons set forth below, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Cross-Motion for Summary Judgment be **GRANTED**.

## PROCEDURAL BACKGROUND

On January 24, 2012, Plaintiff filed a Title XVI application for supplemental security income, alleging disability beginning on January 1, 2009. <u>See</u> Administrative Record ("AR") at 185-93. The claim was denied initially on March 7, 2012, and upon reconsideration on September 25, 2012, resulting in Plaintiff's request for an administrative hearing. <u>Id.</u> at 85-93, 95-105, 125.

On November 4, 2013, a hearing was held before Administrative Law Judge ("ALJ") Jesse Pease. <u>Id.</u> at 62-84. Plaintiff, who was represented by counsel, and an impartial vocational expert ("VE") Alan Ey testified at the hearing. <u>See id.</u> In a written decision dated November 15, 2013, ALJ Pease determined that Plaintiff "has not been under a disability within the meaning of the Social Security Act since January 24, 2012, the date the application was filed." <u>Id.</u> at 43, 56. Plaintiff requested review by the Appeals Council. <u>Id.</u> at 26. In an order dated October 22, 2014, the Appeals Council denied review of the ALJ's ruling, and the ALJ's decision therefore

---

[1] Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment appear on the Docket as two documents, numbers 33 and 34. The contents of the documents are the same so, for clarity, the Court will refer to Defendant's cross-motion and opposition as one document, namely, "Def.'s Mot." and will cite to ECF No. 33-1.

14cv2893-BAS (BLM)

became the final decision of the Commissioner.  Id. at 9-15.

On December 8, 2014, Plaintiff filed the instant action seeking judicial review by the federal district court.  See ECF No. 1.  On December 14, 2015, the District Judge held a hearing due to Plaintiff's failure to prosecute the case under Civil Local Rule 41.1 and failure to serve his Complaint in compliance with the Federal Rules of Civil Procedure.  ECF Nos. 6 & 7.  Plaintiff did not appear at the hearing, and on December 15, 2015, the Court dismissed the action without prejudice and entered judgment.  ECF No. 8; see also ECF No. 7.  On February 8, 2016, Plaintiff filed a motion to vacate or set aside the dismissal and reopen the case, claiming that he was incarcerated from March 31, 2015 until February 1, 2016.  ECF No. 10 at 1-2.  On February 23, 2016, the District Judge granted Plaintiff's motion, vacated the judgment and dismissal, and reopened the case.  ECF No. 11 at 2.

On August 15, 2016, Plaintiff filed a motion for summary judgment alleging that "the ALJ failed to provide clear and convincing reasons to reject the opinion of [Plaintiff's] treating doctors."  Pl.'s Mot. at 3-8.  On September 9, 2016, Defendant filed a timely cross-motion for summary judgment asserting that the ALJ's decision was supported by substantial evidence and the ALJ correctly gave reduced weight to the opinions of Plaintiff's treating physicians because the opinions lacked support and were inconsistent with the record.  Def.'s Mot. at 3-22.  On September 26, 2016, Plaintiff timely filed a reply.  Pl.'s Reply.  Defendant did not file a reply. See Docket.

**DISABILITY HEARING**

On November 4, 2013, ALJ Pease presided over a disability hearing during which Plaintiff and a VE testified.  See AR at 43, 62-84.  Plaintiff was fifty-five years old at the time of the

hearing. <u>See</u> <u>id.</u> at 65. During the hearing, the ALJ questioned Plaintiff regarding his work experience and alleged disability. <u>Id.</u> at 66-77. Plaintiff testified that he has a GED, that he has not worked since May 2009, that he was incarcerated for four months for a drug-related crime and released on June 25, 2013, and that he is homeless. <u>Id.</u> at 66, 70, 76.

Plaintiff stated that he has several "issues" with his right knee, ankle, and foot, and that he is awaiting a surgery authorization for his right foot. <u>Id.</u> at 67. In regard to his right foot, Plaintiff stated that his doctor wants to remove a bunion from "where the bone comes from the ankle and connects to the big toe . . . because it's all frozen." <u>Id.</u> at 68. With respect to his right knee, Plaintiff testified that his "knee is gone," that he is "losing tissue" under his right knee cap, has "bone on bone in there," and has "a very thin layer left between the outside of the bone . . . on the outside of the leg from the kneecap going around the back." <u>Id.</u> at 67-68. Plaintiff stated that he had a surgery on that knee, during which "loose material" in the knee was "cleaned out." <u>Id.</u> at 68. Plaintiff also testified that he underwent a 6–7 week therapy involving the discharge of "electrical pulse that went through" his knee, and that he is getting injections every 90 days. <u>Id.</u> at 71-72. Plaintiff alleged that he continues to have "problems" with the knee and would need to have the knee "replaced eventually." <u>Id.</u> at 68.

Plaintiff stated that he uses a cane and wears a foot brace. <u>Id.</u> at 71-72. Plaintiff further stated that he takes Vicodin, Diclosneg, Tylenol, Napercin, Aspirin, and Netadine, and that Vicodin "really help[s] out" with his pain, but that pain medication makes him drowsy. <u>Id.</u> at 72-74. He claimed that he needs to stand up and "wiggle a little bit" to keep himself from falling asleep while sitting. <u>Id.</u> at 73. Plaintiff testified that he sleeps for about five to six hours a night, frequently wakes up in pain, urinates 4-5 times a night, and naps about four hours per

4

day.  Id. at 74-75.

Plaintiff also testified that he has issues with the left side of his hip and left shoulder, and that his left shoulder magnetic resonance imaging ("MRI") showed a "hole" inside of his rotator cuff.  Id. at 69.  Plaintiff further alleged that that when he reaches to pick up something or reaches above his head with both hands, his left shoulder "gives [him] problems."  Id.  Plaintiff stated that he can lift approximately 20 pounds with his left arm, but cannot do it "off and on all day long," and that he is not sure how much he can lift with his right arm.  Id.  He testified that he sometimes wipes tables and picks up light chairs as part of his "recovery program."  Id. at 70.  He also stated that he can walk short distances, but needs to sit down, and that sometimes when he sits, he gets stiff and needs to stand up and/or stretch out.  Id.  Plaintiff also testified that after he reads, he needs to rest his eyes, and that sometimes he cannot easily retain information.  Id. at 75-76.  Additionally, Plaintiff claimed that he had been having "stomach pains for a few years."  Id. at 70.

Plaintiff further testified that he had performed "line installer," telecommunications, and telemarketing work in the past.  Id. at 78-79.  The VE classified Plaintiff's past work as a line installer-repairer, 832.381-014, SVP-7, skilled, heavy; a machine operator, 649.685-070, SVP-3, semi-skilled, medium "although it may have been heavy as performed"; and a telemarketer, 299.357-014, SVP-3, semi-skilled, sedentary.

## ALJ'S DECISION

On November 15, 2013, the ALJ issued a written decision in which he determined that Plaintiff was not disabled as defined in the Social Security Disability Act.  Id. at 43-56.  Initially, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 24,

2012, the application date.  Id. at 45.  He then considered all of Plaintiff's medical impairments and determined that Plaintiff had the following "nonsevere" impairments: "gastritis, esophageal dyskinesia, allergic rhinitis, left knee lateral patellofemoral ligament sprain and superficial cartilage fissure, left foot big toe bunion, and obesity."  Id.  The ALJ further determined that the following of Plaintiff's impairments were "severe" as defined in the Regulations:

> right knee severe osteoarthritis, with Grade 4 medial femoral condyle eburnation and suprapatellar lipoma and medial meniscus tear, status post right knee diagnostic arthroscopy, partial medial meniscectomy, excision of suprapatellar lipoma, and minor chondroplasty on July 13, 2012; right foot big toe hallux valgus deformity (a.k.a., bunion) with hallux limitus; left shoulder partial-thickness articular surface tear of the supraspinatus tendon, a tiny focal full-thickness perforation at the junction of the supraspinatus and infraspinatus tendons, and os acromiale; and left hip modest osteoarthritis.

Id.; see also id. at 49-53.  At step three, the ALJ found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)."  Id. at 47.

The ALJ concluded that Plaintiff's residual functional capacity ("RFC") permitted him to "stand and/or walk for two hours out of an eight-hour workday," and to "lift a maximum of 10 pounds with the non-dominant left upper extremity," which comports with a "capacity to perform a range of light work, as defined in 20 C.F.R. § 416.967(b) and SSR 83-10."  Id.  The ALJ further found that Plaintiff is "precluded from overhead activity with the non-dominant left upper extremity . . . climbing ladders, ropes, or scaffolds," but that he can "otherwise perform postural activities on an occasional basis," and that he needs to use a cane "for ambulation outside his immediate work area."  Id. at 47-48.  The ALJ then found that Plaintiff could still perform his

past relevant work as a telemarketer.  Id. at 56.

## STANDARD OF REVIEW

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error.  Id.; see also Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence is "more than a mere scintilla, but may be less than a preponderance."  Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citation omitted).  It is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion."  Id. (citation omitted); see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "In determining whether the [ALJ's] findings are supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted).  Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision.  See Batson, 359 F.3d at 1193.  This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.  See Lewis, 236 F.3d at 509.

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision.  See Batson, 359 F.3d at 1193.  Section

7

405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. Id.

### DISCUSSION

Plaintiff argues that the ALJ failed to provide a legitimate basis for rejecting the opinions of his treating physicians, Drs. Zink and Tafara. Pl.'s Mot. at 5-8. Plaintiff further asserts that the ALJ should have recontacted his treating physicians for clarification as part of the ALJ's duty to develop the record. Id. at 6. Plaintiff also argues that the Court should "credit the limitations of the treating doctors as true and award the benefits sought." Id. at 7.

Defendant contends that the ALJ "provided good reasons in assigning little weight to the opinions of Plaintiff's treating physicians provided in a pre-printed checklist questionnaire," which Plaintiff's attorney requested Drs. Zink and Tafara to fill out. Def.'s Mot. at 10-12. Specifically, Defendant contends that Dr. Zink's questionnaire includes an opinion on an issue reserved to the Commissioner, lacks detailed explanation, and contains responses that are self-contradictory and inconsistent with the medical record, Plaintiff's testimony, and Dr. Haaland's opinion. Id. at 12-24. Defendant also argues that Dr. Tafara failed to provide a detailed explanation supporting her opinion. Id. at 12-13. Finally, Defendant asserts that the ALJ had no duty to further develop the record in this case. Id. at 22-27.

Plaintiff replies that the ALJ failed to identify clear and convincing reasons for rejecting the opinions of Drs. Zink and Tafara. Pl.'s Reply at 3-5. Plaintiff notes that Dr. Zink's and Dr. Tafara's opinions are "not contradicted by any other treating doctor and the limitations are supported by the treatment notes." Id. at 3-4. Plaintiff also contends that Defendant merely

highlighted the ALJ's inadequate analysis by providing "*post hoc* rationales to fill in the gaps of the ALJ's [decision]." Id. at 4.

## I.   Opinions of Treating Doctors

### A.   Plaintiff's Medical Records

The medical records most relevant to the instant issue come from Drs. Zink, Tafara and Haaland.  The records establish that Dr. Tafara treated Plaintiff on several occasions in 2008 and 2011, and examined him once in 2013 when he was applying for supplemental security income.  See AR at 432-33, 435, 441, 447, 814-15, 829-30, 832, 838, 844, 850.  Dr. Tafara indicated in her May 30, 2008 treatment notes that Plaintiff had swelling in his right foot.  Id. at 850.  Dr. Tafara's April 15, 2011 treatment notes reference Plaintiff's MRI results showing full-thickness right knee cartilage fissure.  Id. at 441, 838.  Her July 15, 2011 notes indicate that Plaintiff complained of left hip pain and stiffness, asked to be reinstated on Vicodin, and that she refused to reinstate Vicodin because Plaintiff had tested positive for cocaine.  Id. at 435, 832.  Dr. Tafara's December 23, 2011 notes state that Plaintiff complained of nasal congestion, puffy eyes, and nasal pressure, that he asked to be reinstated on Vicodin, and that Plaintiff "violated pain contract 6 months ago" because he tested positive for cocaine.  Id. at 432-33, 829-30.  Dr. Tafara's findings listed swelling under eyes, maxillary tenderness, swollen turbinates, and clear oropharynx, and she diagnosed "allergic rhinitis."  Id.

Dr. Tafara's September 27, 2013 notes indicate that Plaintiff was applying for supplemental security income and needed a "form for lawyer describing diagnosis of [left] foot condition."  Id. at 814-15.  Dr. Tafara examined Plaintiff, noted that he reported that he "continues with pain and limited ambulation," and that he had tested positive for cocaine, but

9

was "clean" as of July 2013. Id. at 814. Dr. Tafara also listed the following surgical history: appendectomy, gunshot wound to the right shoulder and the right knee, and cholecystectomy. Id.

On October 4, 2013, Dr. Tafara filled out a form entitled "Medical Statement Regarding Ankle Problem for Social Security Disability Claim." Id. at 662. Under the history section, Dr. Tafara noted hallus valgus, pain and mild deformity. Id. Dr. Tafara diagnosed "right knee cartilage fissure" and stated that Plaintiff's condition was "chronic [and] ongoing." Id. Dr. Tafara opined that Plaintiff could stand for 60 minutes at one time, needed to "occasionally" elevate his legs during an 8-hour workday, and suffered from "moderate" pain. Id. In response to the question asking whether Plaintiff "is able to walk a block at a reasonable pace on rough or uneven surface, able to walk enough to shop or bank, able to climb a few steps at a reasonable pace with the use of a single handrail," Dr. Tafara stated "Yes." Id.

According to the medical records, Dr. Zink treated Plaintiff on a monthly basis from January 2012 until February 2013, consistently noted right knee pain, and also noted right foot and shoulder pain, a decreased range of motion in left shoulder, and a large bunion on his right foot. See id. at 463, 508, 510-13, 592-93, 600-601, 627, 630, 632-35, 637-38, 755-56. Dr. Zink's notes also show that Plaintiff was taking Naprosyn, Diclofenac, and Vicodin for his knee pain. Id. at 507-10, 512-13, 627, 629-31.

On January 24, 2012, Dr. Zink noted that the physical examination of Plaintiff's right knee showed positive McMurray sign, mild swelling, and pain along the lateral joint line. Id. at 463. Dr. Zink's July 17, 2012 notes indicate that Plaintiff was "[b]one on bone [and] may need total knee replacement," that he saw a podiatrist and was advised that he would likely need a surgery

on his right foot, and that he requested a new cane.  Id. at 508, 632.  Dr. Zink's August 16, 2012 notes indicate right knee swelling.  Id. at 507.

Dr. Zink's July 2, 2013 exam notes list the following chronic conditions: "[p]ain in joint, lower leg; [b]union; [a]llergic rhinitis, cause unspecified," as well as back pain, muscle weakness, joint pain, and swelling.  Id. at 616, 618.  Dr. Zink's musculoskeletal findings were: "[n]ormal range of motion, muscle strength, and stability in all extremities with no pain on inspection, . . . [l]arge [right] bunion 1st distal metatarsal," "[right] knee positive McMurray and pain along lateral joint line," and no edema in extremities.  Id. at 619.  Dr. Zink's diagnosis was "pain in joint, lower leg."  Id. at 620.

Dr. Zink's July 30, 2013 exam notes indicate: "[p]ain in joint, lower leg; [h]istory of cocaine abuse; [b]union; [a]llergic rhinitis, cause unspecified."  Id. at 621.  Dr. Zink's notes listed the following medical history: a gunshot wound to right shoulder, appendectomy and cholecystectomy, and noted muscle weakness, back pain, and joint pain.  Id. at 621-22.  She noted the following musculoskeletal findings: "[n]ormal range of motion, muscle strength, and stability in all extremities with no pain on inspection," and diagnosed "pain in joint, lower leg."  Id. at 624.

On August 29, 2013, Dr. Zink filled out three forms assessing Plaintiff's foot, knee, and shoulder "problems."  See id. at 606, 609, 611.  On the form entitled "Medical Statement Regarding Foot Problems of Social Security Disability Claim," Dr. Zink stated that Plaintiff complained of right foot pain and had been told that he had a "bunion [and] a bone [illegible] by a previous doctor."  Id. at 606.  Dr. Zink noted the following diagnoses: bunion, hallux limitus and pain of the right foot.  Id.  She opined that Plaintiff could stand for 15 minutes at a time

14cv2893-BAS (BLM)

1   and needed to "frequently" elevate his legs during an 8-hour workday.  Id.  She answered the

2   question whether Plaintiff "is able to walk a block at a reasonable pace on rough or uneven

3   surface, able to walk enough to shop or bank, able to climb a few steps at a reasonable pace

4   with the use of a single handrail" by stating "No."  Id.  Dr. Zink also opined that Plaintiff suffered

5   from "severe" pain, and noted that Plaintiff was referred to a podiatrist and was planning to

6   have a surgery on his right foot.  Id.

7        On the form entitled "Medical Statement Regarding Knee Problem for Social Security

8   Disability Claim," Dr. Zink indicated that Plaintiff had the following "problems" with his right

9   knee: chronic pain, stiffness, swelling, and tenderness, limitation of motion, crepitus, instability,

10  and inability to ambulate effectively, and opined that Plaintiff experienced "severe" pain.  Id. at

11  609.  Dr. Zink answered "none" to the questions asking how many hours Plaintiff could work per

12  day, stand at a time, and sit at a time, and to the amount of weight he could lift on an occasional

13  and frequent basis.  Id.  Dr. Zink opined that Plaintiff could bend occasionally, but could "never"

14  stoop, balance, or climb ladders and stairs.  Id.  Dr. Zink also noted that Plaintiff's "MRI reveals

15  full thickness cartilage fissure [and] joint effusion."  Id.

16       On the form entitled "Medical Statement Regarding Shoulders for Social Security

17  Disability," Dr. Zink listed the following "problems" with Plaintiff's left shoulder: limitation of

18  motion, weakness, pain, muscle atrophy, tendinitis, tendon erosion, rotator cuff tear, and

19  shoulder instability.  Id. at 611.  Dr. Zink answered "none" to the questions concerning the

20  number of hours Plaintiff could work and stand per day, and to the amount of weight he can lift

21  on an occasional and frequent basis.  Id.  She also noted that Plaintiff could stand and sit for 15

22  minutes at a time, and sit for 60 minutes in a workday.  Id.  Dr. Zink also opined that Plaintiff

could "never" use his left arm below shoulder level and raise his left arm over shoulder level, and that Plaintiff experienced "severe" pain. Id.

On September 24, 2012, Dr. Haaland, a non-examining state agency medical consultant, reviewed Plaintiff's medical records and noted that Plaintiff had a "modest" osteoarthritis of left hip; severe osteoarthritis of right knee, grade 4 chondromalacia of medial femoral condyle; a range of motion of 90 degrees; and a full thickness tear of left rotator cuff. Id. at 100. Dr. Haaland further stated that Plaintiff was recovering from a recent arthroscopy, during which "a medial meniscus tear was trimmed and a chondroplasty was performed of his Med Fem Condyle." Id. Dr. Haaland opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for a total of 2 hours, sit for 6 hours in an 8-hour workday, occasionally climb ramps and stairs, stoop, crouch, and crawl, but could not climb ladders. Id. at 102-03. He also opined that Plaintiff's non-exertional limitations included pushing/pulling only with the right lower extremity on a limited basis and no overhead activity with the left upper extremity. Id.

## B. Relevant Law

The opinion of a treating doctor generally should be given more weight than opinions of doctors who do not treat the claimant. See Turner v. Comm'r. of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010) (citing Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995)). If the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Id. Even when the treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ may properly reject the treating doctor's opinion only by providing "specific and legitimate reasons" supported by

substantial evidence in the record for doing so. Id. This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (quoting Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)). "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record." Townsend v. Colvin, 2013 WL 4501476, at *6 (C.D. Cal. Aug. 22, 2013) (internal quotations omitted) (citing Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600).

If a treating doctor's opinion is not afforded controlling weight,

the ALJ must consider the "length of the treatment relationship and the frequency of examination" as well as the "nature and extent of the treatment relationship" . . . . In addition, the ALJ must still consider the other relevant factors such as "the amount of relevant evidence that supports the opinion and the quality of the explanation provided" and "the consistency of the medical opinion with the record as a whole."

West v. Colvin, 2015 WL 4935491, at *8 (D. Or. Aug. 18, 2015) (quoting Orn, 495 F.3d at 631; 20 C.F.R. §§ 416.927(c); 404.1527(c)).

**C.    Analysis**

The Court initially notes that the parties disagree about what standard of review applies in this case. Plaintiff asserts that Dr. Zink's and Dr. Tafara's opinions are "not contradicted by

14

any other treating doctor and the limitations are supported by the treatment notes," and that, therefore, the ALJ was required to identify "clear and convincing" reasons for rejecting the opinions. Pl.'s Reply at 3-5. Defendant maintains that the record contains evidence contradicting Plaintiff's treating physicians' opinions, and thus, the "clear and convincing" standard does not apply to the ALJ's evaluation of the opinions.[2] Def.'s Mot. at 10 n.4 (citing Turner, 613 F.3d at 1222). Defendant further maintains that "the ALJ's reasons suffice under any standard." Id.

As discussed in detail below, the questionnaires filled out by Drs. Zink and Tafara contain opinions that are contradicted by their treatment notes, notes from other physicians and medical provides who examined and treated Plaintiff, Plaintiff's diagnostic test results, Plaintiff's testimony, and by the opinion of the non-treating and non-examining agency physician, Dr. Haaland. When the treating doctor's opinion is contradicted, the ALJ may reject the treating doctor's opinion by providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. See Turner, 613 F.3d at 1222; Lester, 81 F.3d at 830-31. Accordingly, the Court will apply the "specific and legitimate reasons" standard to the ALJ's evaluation of Dr. Zink's and Tafara's opinions.[3] See id.

---

[2] Defendant also argues that even if the "clear and convincing reasons" standard applied, the standard is inconsistent with the deferential substantial evidence standard set forth in 42 U.S.C. § 405(g) and with agency regulations and rulings specifying the rationale its adjudicators should provide in support of their findings. Id. (citing 20 C.F.R. § 416.927; SSR 96-2p).

[3] For the reasons set forth in the following sections, the Court finds that it would reach the same conclusions even if it applied the "clear and convincing reasons" standard of review.

15

## 1.   Dr. Zink's Medical Source Statements

Plaintiff argues that the ALJ improperly rejected the opinions of his treating physician, Dr. Zink, concerning the number of hours per day he could work and that he needs to elevate his legs frequently.  Pl.'s Mot. at 5.  Specifically, Plaintiff contends that the ALJ did not offer any reason to reject Dr. Zink's limitation that Plaintiff would need to "frequently" elevate his legs throughout an 8-hour workday.  Id. (citing AR at 606).  Plaintiff also asserts that the ALJ erred when he rejected Dr. Zink's opinion that Plaintiff could work zero hours per day on the basis that disability is a conclusion reserved for the Commissioner, and argues that Dr. Zink's assessment of zero hours is not equivalent to finding that he is "disabled" because "[t]reating doctors may assume patients are disabled but not understand that there is less demanding work available."  Id. (citing AR at 609).

The ALJ gave Dr. Zink's medical source statements[4] "little weight," reasoning that such statements: (1) state an opinion on an issue reserved to the Commissioner, (2) assess functional limitations that are inadequately supported by clinical findings, and (3) lack sufficient explanation, are self-contradictory, and inconsistent with the claimant's own allegations.  AR at 54.  The Court will address each of those stated reasons.

---

[4] "Medical source statements are medical opinions submitted by acceptable medical sources . . . about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis." Davis v. Barnhart, 71 Fed. App'x. 664, 666 (9th Cir. 2003).

16

**a) Dr. Zink Rendered a Legal Conclusion on the Ultimate Issue of Disability**

As noted above, on August 29, 2013, Dr. Zink filled out a "Medical Statement Regarding Knee Problem for Social Security Disability Claim" form and answered the question asking how many hours Plaintiff could work per day by stating "none." Id. at 609. The ALJ found that this opinion had no probative value and rejected it, reasoning that "[a]s an opinion on an issue reserved to the Commissioner, this statement is not entitled to controlling weight and is not given special significance." Id. at 54. Plaintiff argues that the ALJ improperly afforded "little weight" to this opinion on the basis that it was a legal conclusion on the ultimate issue of disability reserved for the Commissioner. Pl.'s Mot. at 5 (citing 20 C.F.R. § 416.927(e) and Social Security Ruling ("SSR") 96–5, 1996 WL 374183 (Jul. 2, 1996)).

"A person's ability to work is not strictly, or even generally, a medical decision. It is, instead, a combination of medical issues, occupational issues, and social security rules, regulations, and case law, governing disability determinations," and consequently, "the Agency is not bound by a doctor's opinion that a claimant cannot work." Favell v. Astrue, 2011 WL 2784805, at *1 (C.D. Cal. Jul. 14, 2011) (citing SSR 96–5p, 1996 WL 374183; Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002)); see also Martinez v. Astrue, 261 Fed. App.'x 33, 35 (9th Cir. 2007) ("[T]he opinion that [the claimant] is unable to work is not a medical opinion . . . [and] is therefore not accorded the weight of a medical opinion.")). However, the ALJ "must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." SSR 96–5p, 1996 WL 374183, at *2. The ALJ must consider a treating physician's opinion on the ultimate issue of disability as he would consider a treating physician's medical opinion, and "if controverted, [the opinion] can be

rejected only with specific and legitimate reasons supported by substantial evidence in the record." Reddick, 157 F.3d at 725; see also SSR 96–5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

Here, the ALJ properly complied with the law and regulations. The ALJ initially stated that he found the opinion that Plaintiff could not work any hours to have no probative value and he therefore rejected it. AR at 54. The ALJ explained that because it was on an issue reserved for the Commissioner, it was not entitled to controlling weight. Id. He then provided additional reasons for giving little weight to the opinion including that the "specific functional limitations [assessed by Dr. Zink] that would preclude [Plaintiff] from working at the level of substantial gainful activity" are not supported by the medical records, are not properly documented or explained, and are not consistent. Id. As discussed below, these reasons are supported by substantial evidence. Accordingly, the ALJ did not improperly reject this opinion solely on the basis that it was an opinion reserved for the ALJ.

**b) Dr. Zink's Medical Source Statements were Inconsistent with Clinical Findings**

The ALJ performed a careful review of the entire record and found that Dr. Zink's opinion on the pre-printed form that Plaintiff was not able to work any number of hours had "no probative value" and rejected it. Id. As noted above, the ALJ concluded that Plaintiff's severe impairments affected his right knee, right foot, left shoulder, and left hip. Id. at 45. After

18

reviewing Plaintiff's records, the ALJ noted that the medical evidence indicated that Plaintiff had a degenerative impairment of his right knee that required a surgery in the past, which did not resolve the progressive impairment, and that Plaintiff continued to be treated by pain medication and the use of a cane as needed. Id. at 49-51. With respect to Plaintiff's right foot problems, the ALJ noted that Plaintiff had a deformity of right big toe and that surgical intervention was medically necessary but not yet provided. Id. at 51-52. The ALJ also noted that Plaintiff had damage to tendons in the left shoulder that would cause pain with use of the left upper extremity, especially for overhead activity. Id. at 52. With respect to Plaintiff's left hip, the ALJ stated that Plaintiff received only routine conservative treatment, and that there was no indication that he would "require anything more than a short break from sitting to stand and stretch before he could return to sitting." Id. at 52-53.

The Court separately reviewed Plaintiff's records and agrees with the ALJ's decision to discount Dr. Zink's opinion that Plaintiff could work zero hours per day. See id. at 54, 609. As an initial matter, Plaintiff did not testify that he could not work. See id. at 64-84. Rather, Plaintiff testified that he could wipe tables and pick up light chairs, and that he attended a "class." Id. at 70, 73. Plaintiff also admitted in his application for supplemental security income that he did not need help with the "upkeep of a home." Id. at 186. Second, no other treating physician or medical provider indicated that Plaintiff would not be able to work any hours. See generally id. at 273-875. Third, none of Plaintiff's recent diagnostic tests suggest that his conditions are so severe as to preclude him from working. For example, on July 13, 2012, Plaintiff underwent a right knee diagnostic arthroscopy, a partial medial meniscectomy, an excision of suprapatellar lipoma, and a minor chondroplasty, and his postoperative diagnoses

were "Grade 4 medial femoral condyle eburnation and suprapatellar lipoma" and "Medial meniscus tear" [id. at 489-90, 682-83, 799-800], and his August 2012, an x-ray of the knee revealed "mild degenerative changes." Id. at 535-36, 557-58, 701-02. Plaintiff's September 2012 x-ray examination of the right foot showed "hallux valgus and bunion deformity with degenerative changes and decreased joint space" of the first metatarsal phalangeal joint and the second toe proximal interphalangeal joint abutting the medial interphalangeal joint of the great toe. Id. at 785. His June 2012 x-ray of left shoulder showed a "surface tear" and "tiny" focal perforation at the rotator cuff tendons, and "os acromiale," and his August 2012 arthrogram of the left shoulder showed "partial-thickness articular surface tear of the supraspinatus tendon," "[t]iny focal full-thickness perforation at the junction of the supraspinatus and infraspinatus tendons," and "[o]s acromiale." Id. at 88-89, 339, 342, 414, 535, 567, 569-70, 648-50, 736. Plaintiff's August 8, 2011 x-ray of the left hip showed modest osteoarthritis. Id. at 339, 860. None of these records support Dr. Zink's opinion that Plaintiff's medical condition prohibits him from working any amount of time.

The ALJ also discounted Dr. Zink's opinion because it indicated the presence of symptoms that were not documented by Dr. Zink or any other medical source in the treatment notes, such as right knee instability, muscle atrophy, and weakness in the left shoulder. Id. at 54. The Court's review of the medical record confirms this conclusion. See generally AR.

Further, Dr. Zink indicated on the form entitled "Medical Statement Regarding Foot Problems of Social Security Disability Claim" that Plaintiff needed to elevate his legs "frequently" during an 8-hour workday. Id. at 606. The ALJ assigned "little weight" to such assessment stating, inter alia, that Dr. Zink's assessments were "inadequately supported by clinical findings"

20

and were "more severe than is supported by the medical evidence of record." <u>Id.</u> at 54. Plaintiff asserts that the ALJ improperly rejected Dr. Zink's opinion that he would need to elevate his legs during an 8-hour work day. <u>See</u> Pl.'s Mot. at 5-6; Pl.'s Reply at 3-4. In support, Plaintiff claims that his medical records evidence knee swelling and argues that "[e]ven a lay person knows that elevation is the simplest thing to do to help leg swelling." Pl.'s Mot. at 5-6; <u>see also</u> Pl.'s Reply at 4 (alleging that he has swelling, limb weakness and difficulty walking, and that "the need to elevate his leg is consistent" with such symptoms). Plaintiff also cites Dr. Rudolph's and Dr. Tafara's treatment records noting swelling. <u>See</u> Pl.'s Mot. at 5; Pl.'s Reply at 4.

Plaintiff's records establish that he had swelling in his right knee, foot and ankle during numerous physical examinations [<u>see</u> AR at 850 (Dr. Tafara's notes indicating right foot swelling in May 2008), 390, 392 (Dr. Armstrong's and Dr. Hayden's notes indicating mild effusion of right knee in February 2011), 546, 699-700 (Dr. Rudolph's notes indicating right knee swelling in June and October 2012), 695-96 (Dr. Rudolph's notes indicating knee swelling in September 2013)], and the ALJ did not discount this evidence. <u>See id.</u> at 51-53 (noting that Plaintiff was found on examination to have effusion and swelling in his right knee on at least three occasions, and foot and ankle swelling on at least one occasion)). However, the mere presence of such symptoms does not substantiate Plaintiff's argument that he needs to elevate his legs. <u>See</u> <u>Hernandez v. Colvin</u>, 2016 WL 1733415, at *4 (C.D. Cal. Apr. 29, 2016) ("the fact that [p]laintiff suffers from edema—a fact the ALJ did not challenge . . . does not substantiate [p]laintiff's testimony that he frequently needed to elevate his legs."). Dr. Zink does not state in any of her treatment notes that Plaintiff needs to elevate his legs. "A discrepancy between a doctor's opinion and his clinical notes constitutes a valid reason to not rely on the doctor's opinion." <u>Cagney v. Colvin</u>,

2015 WL 1385394, at *12 (S.D. Cal. Mar. 24, 2015) (citing Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (finding that ALJ properly rejected physician's opinion where it was contradicted by treatment notes)); Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) (noting that "[a] conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider.").  Furthermore, Plaintiff's medical records establish that no other physician or medical provider instructed or recommended that Plaintiff elevate his legs.[5]  See AR.  Notably, the medical records cited by Plaintiff only show that he was advised to avoid strenuous activity and to apply ice to relieve his symptoms.  Id. at 696.  Finally, the record does not contain any statements by Plaintiff that he needs to elevate his legs.  See AR.

Accordingly, because Dr. Zink's opinions that Plaintiff could work no hours per day and needs to frequently elevate his legs were inconsistent with her treatment notes and other medical records, there was a specific and legitimate reason supported by substantial evidence in the record to discount such opinions.  See Cagney, 2015 WL 1385394, at *11 (the ALJ could properly give "little weight" to plaintiff's treating physician's opinion "so long as [the ALJ] evaluated all the evidence in the record bearing on disability.") (quoting SSR 96-5p, 1996 WL

---

[5]  The Court notes that the record contains a form assessment by Dr. Tafara that Plaintiff needs to "occasionally" elevate his legs, to which the ALJ assigned "reduced weight."  See AR at 55, 662.  Dr. Tafara's assessment conflicts with Dr. Zink's assessment, because Dr. Zink opined that Plaintiff needed to "frequently" elevate his legs during an 8-hour workday.  Id. at 606.  Further, as discussed below, Dr. Tafara's assessment conflicts with her treatment notes, and no other physician or medical care provider indicated that Plaintiff needs to elevate his legs.  See AR.

374183, at *3); see also Ghanim v. Colvin, 763 F.3d at 1161; Tommasetti, 533 F.3d at 1041

("The incongruity between [a physician's] [q]uestionnaire responses and [plaintiff's] medical

records provides [a] specific and legitimate reason for rejecting [the physician's] opinion of

[plaintiff's] limitations."); Radomski v. Colvin, 2013 WL 12100711, at *4 (S.D. Cal. Jul. 12, 2013)

("[T]he incongruity between a physician's questionnaire responses and medical records provides

a specific and legitimate reason for rejecting the physician's opinion.").

### c) Dr. Zink's Medical Source Statements are Self-Contradictory, Inconsistent with Plaintiff's Allegations, and Lack Sufficient Explanation

The ALJ further stated that he assigned little weight to Dr. Zink's medical source

statements on the grounds that they are self-contradictory, inconsistent with Plaintiff's

allegations, and lack sufficient explanation.   AR at 54.   The Court reviewed Dr. Zink's

assessments on the three forms cited by Plaintiff and concludes that they are contradictory.  For

example, Dr. Zink assessed Plaintiff's ability to stand at one time as 15 minutes on the forms

regarding Plaintiff's right foot and left shoulder [id. at 606, 611], but noted that Plaintiff could

not stand for any amount of time on the form regarding Plaintiff's right knee.  See id. at 609.

Further, Dr. Zink assessed Plaintiff's ability to sit at one time as 15 minutes on the form regarding

Plaintiff's left shoulder [id. at 611], but indicated that Plaintiff could not sit for any amount of

time on the form regarding Plaintiff's right knee.  See id. at 609.

Additionally, Dr. Zink's assessments are inconsistent with Plaintiff's allegations.

Specifically, in response to the questions asking how many pounds Plaintiff could lift on an

occasional and/or frequent basis, Dr. Zink stated "none."   Id. at 609, 611.  However, Plaintiff

testified during his disability hearing that he can lift approximately 20 pounds with his left arm,

23

but cannot do it "off and on all day long," that he is not sure how much he can lift with his right arm, and that he sometimes wipes tables and picks up light chairs. Id. at 69-70. Dr. Zink also opined that Plaintiff cannot stand or sit any amount of time during a workday [id. at 609], however, Plaintiff testified that he can walk short distances, but needs to sit down, and that sometimes when he sits, he needs to stand up and/or stretch out. Id. at 70. Additionally, although Dr. Zink opined that Plaintiff needs to frequently elevate his legs during an 8-hour workday [id. at 606], Plaintiff did not mention the need to elevate his legs during his administrative hearing testimony, did not indicate such need when he applied for disability, and did not report it to any of his physicians and medical providers. See id. at 62-84; see also AR.

Dr. Zink's medical source statements also lack sufficient explanation. Although Dr. Zink listed the history of "problems" with respect to Plaintiff's foot [id. at 606 (stating that Plaintiff "complained of [right] foot pain on 4/20/12 & has been told he has a bunion [and] bone [illegible] per previous doctor")], and current diagnoses [id. (bunion, hallux limitus, and pain in the right foot)], the only other explanation that Dr. Zink provided for her conclusions on the forms at issue was that Plaintiff was referred to podiatry, that a surgery was planned on his right foot, and that Plaintiff's right knee MRI revealed "full thickness cartilage fissure [and] joint effusion." See id. at 609; see also id. at 606, 611. Dr. Zink provided no explanation for her conclusion that Plaintiff could not work any hours per day and/or that he needs to "frequently" elevate his legs. See id. at 606, 609, 611. Because Dr. Zink's medical source opinions lack sufficient explanation, are self-contradictory, and are inconsistent with Plaintiff's testimony, the ALJ properly discounted them. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (noting that "internal inconsistencies" within a physician's report constituted a

legitimate basis for discounting the report); <u>Quesada v. Colvin</u>, 525 Fed. App.'x. 627, 630, (9th Cir. 2013) (concluding that the ALJ properly rejected treating physician's assessed limitations because they were inconsistent with the claimant's testimony); <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir. 2012) (stating that the ALJ may "permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions.") (citations omitted).

Finally, Dr. Zink's form assessments are also inconsistent with the opinion of non-examining agency physician and orthopedic surgeon, Dr. Haaland, to which the ALJ afforded significant weight.  AR at 53-54.  Specifically, Dr. Zink opined that Plaintiff could not lift any amount of weight on an occasional and/or frequent basis, and that he cannot stand or sit any amount of time during a workday.  <u>Id.</u> at 609, 611.  However, Dr. Haaland opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for a total 2 hours, sit for 6 hours in an 8-hour workday, and push/pull only with the right lower extremity on a limited basis.[6]  <u>Id.</u> at 102-03.

---

[6]  The Court also notes that Dr. Zink's medical source opinions with respect to Plaintiff's limitations are inconsistent with the opinions of Plaintiff's other treating physician, Dr. Tafara, to which the ALJ assigned "little weight."  <u>See id.</u> at 54-55.  For example, in response to the question asking whether Plaintiff "is able to walk a block at a reasonable pace on rough or uneven surface, able to walk enough to shop or bank, able to climb a few steps at a reasonable pace with the use of a single handrail" Dr. Zink replied "No" [<u>id.</u> at 606], while Dr. Tafara stated "Yes."  <u>Id.</u> at 662.  Further, Dr. Zink opined that Plaintiff suffered from "severe" pain [<u>id.</u> at 606, 609, 611], while Dr. Tafara assessed Plaintiff's level of pain as "moderate."  <u>See id.</u> at 662.  Finally, although Dr. Zink opined that Plaintiff could not stand for any amount of time and/or fifteen minutes at one time [<u>id.</u> at 609, 611], Dr. Tafara stated that Plaintiff could stand for 60 minutes at one time.  <u>See id.</u> at 662.

### d) **Conclusion**

In light of the above, the ALJ properly rejected Dr. Zink's medical source statements regarding the number of hours Plaintiff could work per day and his need to frequently elevate his legs throughout an 8-hour workday. See id. at 54; Thomas, 278 F.3d at 957 (noting that an ALJ is not required to accept the opinion of any medical source, including a treating medical source, "if that opinion is brief, conclusory, and inadequately supported by clinical findings."); Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) ("the regulations give more weight to opinions that are explained than to those that are not . . . , and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists . . . .") (citing 20 C.F.R. § 404.1527(d)(3), (d)(5)); see also SSR 96–5p, 1996 WL 374183; Cagney, 2015 WL 1385394, at *11 (concluding that the ALJ correctly gave "little weight" to plaintiff's treating physician's statement that plaintiff "remains disabled from further employment," where the physician's opinion was inconsistent with his treatment records and the record did not support the physician's opinion that plaintiff was incapable of performing all work). The ALJ thus met his burden to provide "specific and legitimate" reasons for assigning reduced weight to Dr. Zink's medical source statements.

In addition, even if Plaintiff needs to elevate his legs during a workday, the ALJ still would have found that Plaintiff could perform the telemarketer job. The ALJ found that Plaintiff could perform his past relevant work as a "Telemarketer, DOT 299.257-014, sedentary, semi-skilled (SVP 3), as generally performed pursuant to the DOT and as actually performed by the claimant." AR at 56. The DOT describes a telemarketer job (299.357-014) as follows:

> Solicits orders for merchandise or services over telephone: Calls prospective customers to explain type of service or merchandise offered. Quotes prices and

tries to persuade customer to buy, using prepared sales talk. Records names, addresses, purchases, and reactions of prospects solicited. Refers orders to other workers for filling. Keys data from order card into computer, using keyboard. May develop lists of prospects from city and telephone directories. May type report on sales activities. May contact DRIVER, SALES ROUTE (retail trade; wholesale tr.) 292.353-010 to arrange delivery of merchandise.

DOT 299.357-014. The above description of the telemarketer job would not preclude Plaintiff from elevating his legs. See e.g., Johnson v. Colvin, 2016 WL 3769338, at *5 (D. Del. Jul. 13, 2016) (noting that although job availability would drop if plaintiff needed to "elevate his leg while sitting," there was "an abundance of *telemarketing*, reception, and check cashing positions available in the [relevant geographical] area.") (emphasis added). The Court therefore **RECOMMENDS** that Plaintiff's Motion for Summary Judgment on this issue be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**.

### 2. Dr. Tafara's Medical Source Statements

Plaintiff contends that the ALJ improperly rejected Dr. Tafara's opinion that Plaintiff would need to elevate his legs throughout an 8-hour workday. Pl.'s Mot. at 5-6; Pl.'s Reply at 4. On October 4, 2013, Dr. Tafara filled out a form entitled "Medical Statement Regarding Ankle Problem for Social Security Disability Claim" and noted that Plaintiff needed to "occasionally" elevate his legs during an 8-hour workday. AR at 662. The ALJ assigned "little weight" to the above assessment stating, *inter alia*, that that there was "no connection made between the claimant's impairments and the need to elevate his legs while working either on this form or in the treatment notes." Id. at 55. Plaintiff claims that Dr. Tafara was not required to "make anymore specific of a connection than the fact that she treats [him] for ankle and knee pain and that he has a right knee cartilage fissure that requires leg elevation," that the record evidences

27

that he has knee swelling, and that "[e]ven a lay person knows that elevation is the simplest thing to do to help leg swelling." Pl.'s Mot. at 5-6.

Other than noting a history of "problems" with respect to Plaintiff's ankle [AR at 662 (noting "R hallus valgus—pain & mild deformity")], and the diagnosis of "right knee cartilage fissure" [id.], Dr. Tafara did not provide any other explanation on the form for her conclusion that Plaintiff needs to elevate his legs. See id. Further, although Dr. Tafara noted in May 2008, that Plaintiff had some swelling in his right foot [see id. at 850], none of her treatment notes indicate that Plaintiff needs to elevate his legs, and no physician or medical provider (other than Dr. Zink) recommended that Plaintiff elevate his legs. See AR. As such, Dr. Tafara's assessment conflicts with her treatment notes and the medical record. Furthermore, Dr. Tafara's assessment conflicts with Plaintiff's allegations, because Plaintiff did not report the need to elevate his legs to any of his medical providers, and neither mentioned this limitation on any of the documents submitted in support of his disability claim nor during his administrative hearing. See id. at 62-84, see also AR. The ALJ therefore met his burden to provide "specific and legitimate" reasons for assigning reduced weight to Dr. Tafara's medical source assessment concerning Plaintiff's alleged need to elevate his legs. See Dias v. Colvin, 2016 WL 758345, at *3 (N.D. Cal. Feb. 26, 2016) (finding that substantial evidence supported the ALJ's decision to discount a doctor's opinion that plaintiff needed to elevate her legs during a workday, where the opinion conflicted with the doctor's examination notes); Thomas, 278 F.3d at 957 (stating that an ALJ need not accept the opinion of a treating medical source "if that opinion is brief, conclusory, and inadequately supported by clinical findings."); Molina, 674 F.3d at 1111 (the ALJ may "permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of the bases

of their conclusions."); Holohan, 246 F.3d at 1202 ("the regulations give more weight to opinions that are explained than to those that are not."). Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment on this issue be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**.

## II.   Duty to Develop the Record

Plaintiff claims that the ALJ has an independent duty to fully and fairly develop the record and argues that "if the ALJ believed he could not reconcile the opinions of the treating doctors[,] he should have at least attempted to recontact them for clarification." Pl.'s Mot. at 6-7. Defendant maintains that the ALJ had no duty to develop the record or recontact the doctors in this case, because the ALJ did not find that the record was inadequate to make a disability determination, and because there was no ambiguity in the evidence. Def.'s Mot. at 24-27.

In social security cases, it is the claimant's duty to demonstrate that he suffers from a disability. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); 42 U.S.C. § 423(d)(5). Nevertheless, the ALJ has an independent duty to "fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citation omitted); see also Widmark v. Barnhart, 454 F.3d 1063, 1069 (9th Cir. 2006). This duty is triggered by ambiguous or insufficient evidence. Tonapetyan, 242 F.3d at 1150; Mayes, 276 F.3d at 459-60. The ALJ must not be "'a mere umpire' during disability proceedings," rather he must "'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" Widmark, 454 F.3d at 1068-69 (9th Cir. 2006) (citation omitted). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow

for proper evaluation, triggers the ALJ's duty to "conduct an appropriate inquiry." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996).

In this case, the record was neither ambiguous nor inadequate to permit a full and proper evaluation of Plaintiff's condition and physical impairments. The ALJ reviewed, summarized, and considered the voluminous record, which includes over 600 pages of medical records, Plaintiff's testimony during the administrative hearing, and other statements Plaintiff provided in support of his application. See AR at 46-57. The record includes Dr. Tafara's and Dr. Zink's treatment notes and opinions on the preprinted forms, and the ALJ properly analyzed and considered them. Id. at 50-53, 55-56. The ALJ also discussed and considered treatment records from numerous other physicians and medical providers, and Plaintiff's diagnostic test results, including x-rays and MRIs. Id. at 50-55. Furthermore, the ALJ thoroughly discussed with Plaintiff his medical history, treatment, and functional limitations during the administrative hearing. See id. at 62-84.

The Court therefore finds that ample evidence was present in the record to allow the ALJ to properly evaluate Plaintiff's alleged impairments. See Smolen, 80 F.3d at 1288; Tonapetyan, 242 F.3d at 1150. The Court also finds that the record was in no way ambiguous such that the ALJ was duty bound to "conduct an appropriate inquiry" or to seek further clarification from Plaintiff's physicians. Id. Under these circumstances, the ALJ had no obligation to seek out additional records or testimony. Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment on this issue be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**.

14cv2893-BAS (BLM)

## CONCLUSION

For the reasons set forth above, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Cross-Motion for Summary Judgment be **GRANTED** and that the decision of the ALJ be **AFFIRMED**.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties no later than **May 12, 2017**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **May 26, 2017**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED**.


Dated: 4/25/2017

Hon. Barbara L. Major
United States Magistrate Judge

14cv2893-BAS (BLM)